IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**RONDELL H. HOLDER,**                    Case No. 3:15 CV 1463

      Petitioner,                    Judge John R. Adams

      v.                    Magistrate Judge James R. Knepp, II

**CHARLOTTE JENKINS, WARDEN[1],**

      Respondent.                    REPORT AND RECOMENDATION

## INTRODUCTION

On July 16, 2015, Petitioner Rondell H. Holder ("Petitioner"), a prisoner in state custody, filed a petition under 28 U.S.C. § 2254 seeking a writ of habeas corpus ("Petition"). (Doc. 1). This matter is before the Court on Respondent Warden Charlotte Jenkins ("Respondent")'s Motion to Dismiss with attached exhibits filed on October 16, 2015. (Doc. 5). Petitioner filed a response in opposition on November 2, 2015. (Doc. 6). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 25, 2015). For the reasons discussed below, the undersigned recommends the Court GRANT Respondent's Motion and DISMISS the Petition as time-barred.

## FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if a petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

---

1. Pursuant to Rule 2(a) of Rules Governing Section 2254, the Petitioner must name as respondent the state officer who has custody of him. Charlotte Jenkins, as Warden of the Chillicothe Correctional Institution, is the proper party respondent.

This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. In this case, Ohio's Sixth District Court of Appeals set forth the following findings of procedural history and fact:

> Appellant was indicted on October 31, 1997, on twenty-nine separate counts arising out of appellant's alleged sexual conduct with his two step-daughters. . . .
>
> Appellant filed a motion to suppress certain statements he made to the police during an interrogation on October 15, 1997. According to the testimony at the suppression hearing and the transcripts of appellant's interviews, appellant was first interviewed on October 14, 1997, for approximately an hour and twenty minutes. Prior to commencing the interview, Captain Bob McLaughlin reminded appellant of his right to remain silent and that anything appellant said could be used against him in a criminal trial. During this initial interview, appellant was tape recorded. The interview concluded with no statements being taken from appellant.
>
> Appellant was brought into the prosecutor's office the following day on October 15, 1997 to take a polygraph examination. Chief Mike White, from Monroeville, was a certified polygraph operator. He testified that he was contacted by facsimile on October 15, 1997, around 12:30 p.m., was provided a copy of the police report, and went to Norwalk, Ohio to conduct appellant's polygraph examination. The polygraph test, however, was never actually administered. Prior to the test beginning, Chief White presented appellant with a 'participating' Miranda form, whereby appellant was asked a series of questions, and appellant responded. The questions and answers from the 'MIRANDA RIGHTS' form were as follows:
>
>> Q: When can you have an attorney?
>> A: At all times.
>> Q: Can you have an attorney at any time you want to, including right now?
>> A: Yes.
>> Q: Can you use my telephone—free of charge—to call an attorney at any time you want to?
>> A: Yes.
>> Q: What will happen if you can not afford an attorney and you want one?
>> A: State will appoint one.
>> Q: Do you have to answer even one of my questions or say anything to me?
>> A: No.
>> Q: What if you start to answer my questions and then you want to stop, can you stop any time you want to?
>> A: Yes.

2

Q: Do you realize that if I am called into court to testify about what both you and I said in here today, I will be placed under oath to tell the complete truth?
A: Yes.
Q: Would you want me to tell the truth, or would you want me to lie?
A: Tell truth.
Q: I will tell the complete truth, regardless if it helps or hurts the prosecutor of helps or hurts your side, do you realize that. [sic]
A: Yes.
Q: Now that you know all these rights that you do have, do you wish me to continue?
A: Yes.

Appellant certified the accuracy of his answers to the <u>Miranda</u> form by signing his name after the following paragraph:

'<u>CERTIFICATION</u>: I understood all of the above questions asked me. [sic] I have read everything on this page, including my truthful answers. I have been allowed to make any changes I wished to make. I wish to continue without an attorney. I am here of my own free will. I know I can leave this room by merely telling <u>Mike White</u> that I wish to leave.'

Following appellant's signing of the <u>Miranda</u> form, appellant made statements to Chief White, who wrote them down on two separate sheets. There was a total of four paragraphs describing appellant's conduct, all signed by appellant. Appellant signed the statements and acknowledged the truth of them. Chief White testified that he did not threaten appellant in any way. White further testified that appellant expressed a desire to speak with his minister. The interview ended around 2:00 p.m.

(Doc. 5, Ex. 8 at 96-99).

## PROCEDURAL BACKGROUND

### State Court Conviction

In 1997, the Huron County Ohio Grand Jury indicted Petitioner on 29 counts: nineteen counts of rape, (three included sexually violent predator specification, seven indicated the individual was younger than thirteen, and seven more indicated the individual was younger than thirteen with force specifications); and ten counts of sexual battery when the offender is the other

3

person's natural or adopted parent or step-parent, or guardian, custodian, or person in loco parentis of the other person (six of these counts included a sexually violent predator specification). (Doc. 5, Ex. 1). Following arraignment, Petitioner entered a plea of not guilty. (Doc. 5, Ex. 2).

He later entered a plea of no contest to two counts of rape and one count of attempted sexual battery. The State dismissed the remaining 26 counts in the indictment. (Doc. 5, Ex. 3). The trial court accepted the plea, found him guilty, and sentenced him to a total of 15 to 50 years in prison. (Doc. 5, Exs. 3-4).

## Direct Appeal

Petitioner, through counsel, timely appealed to the Sixth District Court of Appeals in Huron County, Ohio. (Doc. 5, Ex. 5). He asserted the following assignment of error:

> The defendants statements to detective while was involuntary as a matter of law because of promises of leniency made to the defendant and because the police told the defendant the polygraph examination could never be brought up in court. [sic]

(Doc. 5, Ex. 6 at 56).

The state filed a brief in opposition, and the appellate court affirmed the judgment of the trial court. (Doc. 5, Exs. 7-8). Petitioner failed to file a timely appeal to the state supreme court.

## Post-Conviction Proceedings

In 2008, Petitioner, *pro se*, filed a Motion for Appointment of Counsel and a Motion for Expert Assistance in the Huron County Court of Common Pleas. (Doc. 5, Exs. 9-10). The court denied both motions and Petitioner failed to appeal. (Doc. 5, Ex. 11).

In 2014, Petitioner, again *pro se*, filed a Petition to Vacate or Set Aside Sentence and a Motion to Appoint Counsel in the Huron County Court of Common Pleas. (Doc. 5, Exs. 12-13). The state filed a response. (Doc. 5, Ex. 14). The court denied the petition as untimely and noted

that even if it were timely-filed, the grounds asserted were insufficient to grant relief. (Doc. 5, 15). Petitioner did not appeal this decision.

Also in 2014, Petitioner, *pro se*, filed a Motion to Correct Sentence in the Huron County Court of Common Pleas. (Doc. 5, Ex. 16). The court denied the motion as untimely and noted Petitioner did not present any argument justifying a correction of the sentence. (Doc. 5, Ex. 17). Petitioner, *pro se*, appealed this decision to the Sixth District Court of Appeals. (Doc. 5, Ex. 18). The appeals court ultimately dismissed Petitioner's appeal due to his failure to file a brief or a motion for an extension of time. (Doc. 5, Ex. 23). Soon after, Petitioner, *pro se*, filed a motion for reconsideration. (Doc. 5, Ex. 24). The appeals court denied the motion and noted Petitioner's failure to timely file his brief, tender a brief in conjunction with the motion for reconsideration, or call to the court's attention any obvious errors or raise any issues the court did not consider. (Doc. 5, Ex. 25).

On March 20, 2015, Petitioner filed a Notice of Appeal to the Supreme Court of Ohio and the court declined jurisdiction. (Doc. 5, Exs. 26-28).

**Petition for Habeas Corpus**

On July 24, 2015, Petitioner filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody. (Doc. 1). He asserted the following three grounds for relief:

> **GROUND ONE**: DUE PROCESS AND EQUAL PROTECTION
> **Supporting facts**: On September 5, 2014, Petitioner filed a Motion to the lower court to correct the void sentence as imposed due to the statutory defects in the sentence. [sic]
>
> On October 9, 2014, Petitioner filed a timely notice of appeal, including a motion for counsel and the transcripts.
>
> Subsequent to a 'clerical error' by the Huron County Clerk of Courts, Petitioner was granted leave to file an amended appeal. After multiple requests for status to perfect the appeal, the Sixth Appellate District, despite Petitioner never receiving the requisite 11(B), sua sponte dismissed the appeal [sic]

**GROUND TWO**: DUE PROCESS
**Supporting facts**: On March 30, 1998, Petitioner was sentenced to prior law despite the effective date of Senate Bill 2 enacted in 1996. The legislative authority to sentence Petitioner was ignored by the lower court to the prejudicial effect of Petitioner.

**GROUND THREE**: INEFFECTIVE ASSISTANCE OF COUNSEL
**Supporting facts**: Trial counsel failed to raise the issue of legislative authority or language necessary to impose a sentence that did not comport with Ohio law. [sic]

As provided, Petitioner should at the very least been provided which law to apply at sentencing. [sic]

(Doc. 1). Additionally, Petitioner offered an explanation for filing the Petition outside of the one-year statute of limitations—appearing to concede the Petition was indeed untimely[2]. (Doc. 1, at 12).

## MOTION TO DISMISS

Respondent moved to dismiss the Petition as time-barred, or alternatively, as non-cognizable. The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for a one-year period during which a prisoner in state custody may file a petition for habeas relief in federal court.

**Statute of Limitations**

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

2. Petitioner asserted his Petition should not be barred by the one-year statute of limitations under 28 U.S.C. § 2254(d) because the "[s]entence imposed [was] contrary to law." (Doc. 1, at 12).

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

An appeal to the Ohio Supreme Court from a state appeals court judgment must be filed within 45 days of the appeals court judgment. Ohio S.Ct.Prac.R. 7.01(A)(1)(a). Here, Petitioner failed to do so. Thus, his conviction became final on May 3, 1999—45 days after the appellate court affirmed his conviction. (Doc. 5, Ex. 8). The statute of limitations expired one year later on May 4, 2000. *See* Fed.R.Civ.P. 6(a)(1)(A).

Petitioner appears to concede his Petition is untimely by providing a reason for its delay and presumably argues for the application of equitable tolling. (Doc. 1, at 12). Even if he did not concede, his Petition is untimely because the statute of limitations has expired. Unless tolling applies, the Petition is time-barred. The Court will first address statutory tolling.

***Statutory Tolling***

While the running of the limitations period may be tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims under § 2254 (d)(2), *Artuz v. Bennett*, 531 U.S. 4, 8-9 (2000), this statutory tolling provision does not revive the limitations period, it can only serve to pause a clock that has not yet expired. *Searcy v. Carter*, 246 F.3d 515 (6th Cir. 2001). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the

statute of limitations bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003); *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003).

Here, Petitioner failed to file any actions until 2008 and 2014—well beyond the expiration of the statute of limitations. For that reason, statutory tolling does not apply. Unless equitable tolling applies, the Petition is time-barred.

### Equitable Tolling

Equitable tolling allows courts to review time-barred habeas petitions "provided that 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robinson v. Easterling*, 424 F. App'x 439, 442 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)). To demonstrate entitlement to equitable tolling, a petitioner must establish: 1) he has diligently pursued his rights; and 2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). Equitable tolling is rare, granted sparingly, and evaluated on a case-by-case basis. The petitioner retains the "ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011); *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

In his response, Petitioner largely provides supporting arguments for his underlying Petition, rather than its untimely filing. (Doc. 6). Granting great latitude to Petitioner, however, he colorably argues for equitable tolling. The undersigned finds Petitioner has failed to diligently pursue his rights or present any extraordinary circumstance which stood in his way of timely filing. He waiting over seven years after his conviction became final to take any action and offers no explanation for this delay, much less an extraordinary one.

8

***Actual Innocence***

Petitioner also vaguely asserts actual innocence to the underlying conviction. (Doc. 6, at 2). The Sixth Circuit recognizes the claim of "actual innocence" as a basis for equitable tolling. *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005).

In determining whether a petitioner has met the requirements for establishing a cognizable claim of actual innocence for purposes of equitable tolling, the Sixth Circuit applies the actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298 (1995). *Souter*, 395 F.3d at 588-89. The standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would conclude. Thus, a petitioner does not meet the standard unless he persuades the district court that in light of new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *McCray v. Vasbinder*, 499 F.3d 568, 571-72 (6th Cir. 2007) (quotations omitted); *see also Souter,* 395 F.3d at 602.

> This standard does not require absolute certainty about the petitioner's guilt or innocence: A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty, beyond a reasonable doubt – or, to remove the double negative, that more likely than not any juror would have reasonable doubt.

*McSwain v. Davis*, 287 Fed. Appx. 450, 458-59 (6th Cir. Mich. 2008).

"The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). The petitioner must present *new evidence* of innocence that is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327. New evidence may be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. at 324. Actual innocence does not mean actual innocence in the practical sense of the

term; rather, actual innocence, if proven, is a "gateway" that allows courts to reach the merits of other claims that would otherwise be time-barred or defaulted. *Schlup*, 513 U.S. at 316.

Here, Petitioner fails to present any new evidence to support his claim of actual innocence. (Doc. 6, at 2-3). The argument, therefore, is not well-taken because he failed to meet his burden. Petitioner is not entitled to have the AEDPA statute of limitations tolled through equity or statue. The Petition is time-barred and the undersigned finds it unnecessary to address Respondent's alternative argument asserting that the claims are non-cognizable.

### CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court GRANT Respondent's Motion to Dismiss and DISMISS the Petition as time-barred.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).